*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TANIESHA CLARK-ROSE,

      Plaintiff-Appellant,

v

MGM GRAND DETROIT, LLC,

      Defendant-Appellee,

and

KIMBERLY DANN, SUSANNE BENNETT, TARA MCKNIGHT, EVE MARSTON, KATIE WIEBUSCH, MONIQUE BURGMAN, SCOTT MALINSKI, and TANYA WALKER,

      Defendants.

UNPUBLISHED
March 06, 2026
2:16 PM

No. 373257
Wayne Circuit Court
LC No. 23-001824-CD

Before: WALLACE, P.J., and GARRETT and ACKERMAN, JJ.

PER CURIAM.

Plaintiff, Taniesha Clark-Rose, worked at defendant MGM Grand Detroit, LLC (MGM). She claims that coworkers harassed her and encouraged casino patrons to harass her. She eventually left her employment at MGM and worked at Zeal Credit Union (Zeal), but Zeal terminated her employment after she worked there for only seven months. Clark-Rose filed this action alleging MGM failed to investigate her complaints of harassment and discipline those responsible. She also alleged that MGM's managerial employees made statements to Zeal's employees, resulting in her termination from Zeal. She appeals by right the trial court's order granting MGM's motion for summary disposition under MCR 2.116(C)(10). Clark-Rose argues that the trial court erred because MGM failed to support its motion with admissible evidence as required under the Michigan Court Rules. Because MGM relied on admissible evidence in support of its motion, we disagree with Clark-Rose's argument and affirm.

## I. FACTUAL BACKGROUND

Clark-Rose began working for MGM as a "cage cashier" on May 29, 2001. She continued working the same position throughout her employment at MGM. On February 19, 2019, toward the end of her employment with MGM, Clark-Rose submitted complaints to management via handwritten letters delivered to MGM's human relations department (HR) and via the "EthicsPoint" website. She claimed that fellow employees harassed her by telling patrons her full name and what time her shift ended, which made her feel unsafe when she left the property. She asserted she had been followed home from work. She also stated that persons in "the pits" chanted her name and told her to go home, which humiliated her.

MGM's security team and HR separately investigated Clark-Rose's complaints. Clark-Rose told MGM investigator Eve Marston that a burgundy SUV with tinted windows followed her to work, dealers and patrons talked about her and pointed in her direction, and she heard the phrase "crazy bitch" being used. She also stated that her coworkers encouraged patrons to stare at her, chant her name, and yell insults indicating that she smelled bad. She provided Marston with the times and dates that the chants occurred and the names of employees who witnessed the conduct. She told Marston that if Marston would allow her to view the surveillance video footage, she could identify the persons involved. In addition, she stated she complained to her shift manager, who acted as if she did not know what Clark-Rose was talking about and downplayed the problem. According to Clark-Rose, Marston assured her that a complete investigation would be conducted, and she would be permitted to review all the evidence gathered, including the surveillance video. She also claimed that Marston promised to inform her of the result of the investigation and provide her an opportunity to discuss it.

MGM's security team and HR interviewed employees, including Clark-Rose, and reviewed surveillance footage. The separate investigations failed to corroborate Clark-Rose's complaints. MGM HR employee Susanne Bennett told Clark-Rose that the investigation was closed, and "appropriate action had been taken." Clark-Rose responded that she received an e-mail stating something similar regarding her EthicsPoint complaint that the security team investigated, but the e-mail was vague. Bennett advised Clark-Rose that, although it was frustrating, keeping the details of any disciplinary action confidential respected the privacy interests of all persons involved. Bennett told Clark-Rose to contact her supervisor, Bennett, or EthicsPoint if she experienced a similar issue in the future.

In October 2019, Clark-Rose again submitted complaints to HR and EthicsPoint involving the same type of conduct, which she asserted had continued and grown worse since her previous complaints. She complained that a fellow employee called her a "ho," and she overheard casino patrons mention the cross streets of her home address. She also alleged that employees told patrons her work schedule, and patrons pointed at her and remarked that she smelled bad. She claimed she was a victim of "third party harassment" by casino patrons, who verbally attacked her daily, resulting in a hostile work environment. MGM personnel discussed the matter with Clark-Rose and other employees and reviewed surveillance video, which again failed to corroborate the allegations. Personnel contacted Clark-Rose three times to schedule a follow-up interview, but she failed to respond and instead submitted a letter of resignation on November 1, 2019. In her resignation letter, Clark-Rose stated she was resigning effective November 14, 2019, because of the harassment and hostile work environment and MGM's failure to take action to remedy the problem.

Clark-Rose did not end up working at MGM through November 14, 2019. On November 7, 2019, her supervisor questioned her about a casino payout that purportedly had been made to the wrong person. Although Clark-Rose did not in fact pay the wrong person and "[e]verything in the system lined up," she believed that the accusation was made in retaliation "because of the nature of [her] resignation letter." She stopped working at MGM that day.

Clark-Rose began working at Zeal on November 18, 2019. She had difficulty during her initial training and continued to struggle processing credit union transactions. During the week of February 24, 2020, through February 28, 2020, another Zeal employee had to "shadow" Clark-Rose as she worked. On March 3, 2020, Zeal placed Clark-Rose on an improvement plan, but she continued to struggle, and Zeal terminated her employment on June 25, 2020.

On February 8, 2023, Clark-Rose filed this action against MGM and several MGM employees, alleging retaliation in violation of the Worker's Disability Compensation Act of 1969 (WDCA), MCL 418.101 *et seq*. (Count I); sex discrimination (Count II); violation of the Persons with Disabilities Civil Rights Act, MCL 37.1101 *et seq*. (Count III); violation of the Family and Medical Leave Act (FMLA), 29 USC § 2601 *et seq*. (Count IV); fraud (Count V); civil conspiracy (Count VI); tortious interference with employment (Count VII); and retaliation in violation of the Elliott-Larsen Civil Rights Act (ELCRA), MCL 37.2101 *et seq*. (Count VIII). Defendants removed the case to federal court based on Clark-Rose's federal FMLA claim. Approximately two months later, Clark-Rose filed an amended complaint that alleged only state-law claims against MGM alone. Because the action no longer involved a federal claim, the federal district court remanded the case back to the Wayne Circuit Court.

Thereafter, Clark-Rose filed a second amended complaint against MGM[1] alleging fraud (Count I) and tortious interference with employment (Count II). Specifically, she alleged that MGM assured her that her complaints of harassment and a hostile work environment would be investigated in a fair and complete manner and that she would be permitted to review all the evidence collected, including surveillance video footage. In addition, she asserted MGM promised that the harassment would stop, and disciplinary action would be taken against those responsible. She maintained she relied on MGM's representations and continued her employment with MGM during its "sham" investigation, which caused her to suffer severe psychological injuries. Further, she alleged MGM's employees interfered with her employment at Zeal by contacting Zeal employees and making false and defamatory statements about her, resulting in Zeal terminating her employment.

MGM moved for summary disposition under MCR 2.116(C)(10), arguing that the ELCRA preempted Clark-Rose's fraud claim because the ELCRA was the exclusive remedy for a claim based on alleged harassment. MGM noted that Clark-Rose's initial complaint filed in the circuit court included an ELCRA claim, but the claim was time-barred. MGM also argued that the WDCA barred the fraud claim because Clark-Rose sought worker's compensation benefits, and the WDCA provided the exclusive remedy for injuries arising out of employment. Thus, to the extent that the ELCRA did not bar the fraud claim, the WDCA barred the claim. In addition, MGM asserted that

---

[1] The trial court dismissed all defendants except MGM.

Clark-Rose's collective-bargaining agreement (CBA) barred her fraud claim because she did not file a grievance under the CBA.

Further, MGM argued that it investigated every complaint that Clark-Rose made, contrary to her assertion that MGM failed to investigate her workplace complaints. It interviewed witnesses and reviewed security footage, but its investigation failed to corroborate Clark-Rose's concerns. MGM maintained that Clark-Rose's second amended complaint falsely claimed that no investigation had been conducted, and Clark-Rose could not establish a claim of fraud simply because she disagreed with the outcome of MGM's investigation. MGM attached as exhibits to its motion the investigative records and reports, which it asserted were kept in the regular course of business. Moreover, MGM argued the fraud claim was based on alleged promises involving its investigation, but a claim of fraud cannot be premised on future conduct.

Finally, regarding Clark-Rose's tortious interference with business relationship claim, MGM argued Clark-Rose failed to present any evidence that MGM caused her termination from Zeal. Rather, the evidence showed that Clark-Rose had performance problems that began shortly after she started working for Zeal, and Zeal terminated her employment because of those problems. MGM also denied that its employees had made false and defamatory statements about Clark-Rose to Zeal's employees.

Clark-Rose responded that MGM's motion failed to specifically identify all material facts that were undisputed, as MCR 2.116(G)(4) required. She asserted that there remained material factual disputes regarding whether MGM conducted a thorough, complete, and unbiased investigation and whether MGM intentionally induced her to rely on its promise of such an investigation so she would continue working at MGM while it developed a defense to any potential litigation. She maintained that MGM did not allow her to review the evidence collected during the investigation and did not discuss its findings with her, contrary to its promises to her. She agreed with MGM that a fraud claim cannot be based on a future promise, but asserted her claim was not based on a future promise; rather, MGM did not intend to fulfill its promises to her at the time they were made, and it made the promises only to delay her resignation until it could prepare a "we investigated" defense to her harassment claim. She asserted MGM had no intention of honoring the promises at the time that they were made.

Clark-Rose also argued that a supervisor at MGM told her new supervisor at Zeal that she was a troublemaker, which resulted in her termination from Zeal. In addition, she maintained that all the documents on which MGM relied in support of its motion, except her EthicsPoint complaints, constituted hearsay and were inadmissible, and a motion for summary disposition could not be based on inadmissible evidence. Finally, she denied that the ELCRA or her CBA preempted her fraud claim.

MGM filed a reply brief, arguing that Clark-Rose failed to set forth specific facts establishing a genuine issue of material fact for trial, contrary to MCR 2.116(G)(4). MGM also argued that the trial court should not consider Clark-Rose's "Declaration," attached to her response brief, because it contradicted her deposition testimony. In addition, MGM denied that it relied on inadmissible hearsay in support of its motion. It asserted the majority of its exhibits were admissible under the business-records hearsay exception set forth in MRE 803(6) and its remaining

exhibits were likewise admissible. Further, MGM argued that its motion complied with MCR 2.116(G)(4) and that there was no genuine issue of material fact for trial.

During oral argument on its motion, MGM asserted it was not relying on its investigative reports involving Clark-Rose's complaints for the truth of the matters asserted; rather, it relied on the documents to establish that an investigation was conducted because Clark-Rose argued otherwise. The trial court granted MGM's motion on the basis that Clark-Rose failed to provide admissible evidence establishing a genuine issue of material fact for trial. The court stated: "Plaintiff's entire Complaint is essentially based on her belief that something happened, when now we have evidence and Defendants did the work to show that none of this happened." The court entered a final order dismissing Clark-Rose's claims. This appeal followed.

## II. STANDARD OF REVIEW

We review de novo the trial court's decision on a motion for summary disposition. *Houston v Mint Group, LLC*, 335 Mich App 545, 557; 968 NW2d 9 (2021). A motion under MCR 2.116(C)(10) tests the factual support of the plaintiff's complaint. *Anderson v Transdev Servs, Inc*, 341 Mich App 501, 506; 991 NW2d 230 (2022). The party seeking summary disposition under subrule (C)(10) must provide "[a]ffidavits, depositions, admissions, or other documentary evidence in support of the grounds asserted in the motion . . . ." MCR 2.116(G)(3)(b). In deciding the motion, the trial court must consider the documentary evidence that the parties provide, MCR 2.116(G)(5), "to the extent that the content or substance would be admissible as evidence to establish or deny the grounds stated in the motion," MCR 2.116(G)(6). The trial court considers the evidence in the light most favorable to the nonmoving party to determine whether there exists a genuine issue of material fact for trial. *El-Jamaly v Kirco Manix Constr, LLC*, 514 Mich 263, 278; 22 NW3d 377 (2024). "A genuine issue of material fact remains where, considering the record under this standard, reasonable minds might differ." *In re Forfeiture of 2006 Saturn Ion*, 514 Mich 399, 406; 22 NW3d 446 (2024).

## III. ANALYSIS

In deciding a motion for summary disposition, the trial court must consider the substantively admissible evidence submitted by the parties. *Bate v St Clair Shores*, 347 Mich App 771, 777; 16 NW3d 338 (2023). Clark-Rose argues that the trial court erred by granting MGM's motion because MGM relied on inadmissible hearsay evidence, and, because MGM failed to proffer substantively admissible evidence in support of its motion, Clark-Rose had no obligation to respond to the motion, although she did so. Because MGM relied on substantively admissible evidence in support of its motion for summary disposition, Clark-Rose's argument is unavailing.

MRE 801(c) defines "hearsay" as a statement that:

(1) the declarant does not make while testifying at the current trial or hearing; and

(2) a party offers in evidence to prove the truth of the matter asserted in the statement.

"Hearsay is generally inadmissible unless it falls within a listed exception." *Airgas Specialty Prods v Mich Occupational Safety & Health Admin*, 338 Mich App 482, 515; 980 NW2d 530

(2021). In the trial court, MGM argued that its investigative records of Clark-Rose's complaints did not constitute hearsay because (1) they were not offered for the truth of the matter asserted, and (2) they were admissible under the business-records exception to the hearsay rule set forth in MRE 803(6).

In her second amended complaint, Clark-Rose alleged that MGM assured her it would conduct a thorough and fair investigation of her complaints, but it never intended to do so and instead conducted a "sham and fraudulent investigation." During oral argument on MGM's motion, MGM asserted that it did not rely on its investigative records for the truth of the matters stated in the documents. Ostensibly, then, MGM relied on the records to show it conducted a thorough investigation, including interviewing witnesses and viewing surveillance video, to rebut Clark-Rose's allegation that it conducted a "sham" investigation. "A statement that is not offered to prove the truth of the matter asserted is not hearsay." *Airgas Specialty Prods*, 338 Mich App at 515. Accordingly, Clark-Rose's argument lacks merit to the extent that MGM did not rely on its investigative records to establish the truth of the matter asserted.

The records were also admissible under MRE 803(6), commonly known as the business-records exception to the rule against hearsay. That provision states "A record of an act, transaction, occurrence, event, condition, opinion, or diagnosis" is not excluded by the rule against hearsay if:

> (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;
>
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>
> (C) making the record was a regular practice of that activity;
>
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with a rule prescribed by the Supreme Court or with a statute permitting certification; and
>
> (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

MGM generated the records shortly after Clark-Rose made her complaints, and the records were kept in the course of and as a regular practice of MGM's investigation of employee complaints. If a trial was held, the custodian of the records or another qualified witness could lay the foundation for admitting the records. At the summary disposition stage, however, a party is not required to lay a foundation for the admission of evidence. *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 373; 775 NW2d 618 (2009). Further, Clark-Rose does not contend that the records lack trustworthiness as stated in MRE 803(6)(E). Therefore, MGM's investigation records were admissible, and the trial court could properly consider the records in deciding MGM's motion.

Similarly, Zeal's personnel records involving Clark-Rose were admissible under the business-records exception. If a trial was held, Zeal's representative could authenticate the records. In addition, the trial court did not err to the extent that it relied on letters, memorandums,

and affidavits that MGM included in its exhibits.  Although evidence presented at the summary disposition stage "must be substantively admissible, it does not have to be in admissible form." *Id*.  Accordingly, while the documents themselves may not be admissible, the trial court could properly consider the substance of the documents because the persons authoring the documents could be called to testify at trial.  For example, Ellen C. Harning, Zeal's branch manager, executed an affidavit stating that she never spoke to anyone at MGM about Clark-Rose.  Although the affidavit would not be admissible at trial, the trial court could consider it in deciding MGM's motion for summary disposition because the substance of Harning's statements would be admissible if she testified at trial.  Because MGM properly supported its motion with admissible evidence, Clark-Rose's argument to the contrary lacks merit.

Affirmed.

/s/ Randy J. Wallace
/s/ Kristina Robinson Garrett
/s/ Matthew S. Ackerman